IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KTM AG, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:21-cv-01280 |
| v. | ) | |
| | ) | Hon. Judge Gary Feinerman |
| The Individuals, Corporations, Limited | ) | |
| Liability Companies, Partnerships, and | ) | Hon. Mag. Judge Young B. Kim |
| Unincorporated Associations Identified | ) | |
| on Schedule A Hereto, | ) | |
| Defendants. | ) | |

**Defendant Race_ing's Motion to Dissolve the Preliminary Injunction**

**NOW COMES** Defendant Race_ing ("Race_ing" or "Defendant"), by and through its undersigned counsel, and in support of its Motion to Dissolve the Preliminary Injunction argues as follows:

**I. Procedural and Factual Background**

On March 8, 2021, Plaintiff KTM AG filed its Complaint against individuals and entities that operated domain names and online storefronts, including that of Amazon.com. *See*, Schedule A, [Dkt. 1-1]. Plaintiff alleges that Defendant committed trademark infringement, counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*. Also on March 8, 2021, Plaintiff filed an *ex parte* Motion for a Temporary Restraining Order, seeking to enjoin all defendants in the lawsuit from manufacturing importing, distributing, offering for sale, or selling any counterfeit versions of Plaintiff's products as well as freezing all of the defendants' accounts with their associated storefronts. [Dkt. 8-9] (hereinafter the "TRO"). The Court granted the Plaintiff's Motion for a TRO on March 15, 2021. [Dkt. 15]. On April 13, 2021, Plaintiff filed its Motion for Entry of a Preliminary Injunction, which this Court granted on April 20, 2021. [Dkt. 23]; [Dkt. 30]. Defendant Race_ing filed its appearance and Answer on May 4, 2021. [Dkt. 36-37].

In Plaintiff's original motion for entry of the TRO, it alleged that Defendant Race_ing was "intentionally using Plaintiff's Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit KTM Products are manufactured by or emanate from Plaintiff." [Dkt. 9 at 17]. Based on this false representation, Plaintiff was able to obtain the TRO on or about March 15, 2021, used that to apply an asset restraint on Defendant Race_ing's Amazon account. [Dkt. 15]. Plaintiff's representation to the Court was demonstrably false. Defendant's store listing clearly identified the source of its products as Audew® brand motorcycle turn signal relays which were simply described as working "**for** most Motorcycles such as Honda, Kawasaki, KTM, Suzuki, Yamaha and many other brands as well." *See* the attached **Exhibit A** (emphasis added). Plaintiff's KTM mark appears nowhere else in the product listing and consumers are clearly informed that the product is an Audew® item. **Exhibit A**. This is Defendant's sole alleged "use" of the KTM mark upon which the injunction and asset restraint on its account are based. [Dkt. 9 at 17]. Defendant Race_ing now moves this Court to lift the improper asset restraint or, in the alternative, reduce the asset freeze to properly reflect Plaintiff's actual alleged equitable relief and increase the bond.

## II. <u>Argument</u>

### a. Legal Standard

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997). The preliminary injunction should also be tailored to the violation. <u>Commodity Fut. Trading Comm. v. Lake Shore Asset Mgmt. Ltd.</u>, 496 F.3d 769, 772 (7th Cir. 2007). This Court and numerous other courts have set forth the rule that assets which are not the proceeds or profits of counterfeiting activities may be exempted from an asset freeze. <u>Luxottica USA LLC v. The Partnerships, et al.</u>, No. 1:14-cv-09061, 2015 WL 3818622 (N.D. Ill. 2015); *see also*,

North Face Apparel Corp. v. TC Fashions, Inc., 2006 WL 838993, at *3 (S.D.N.Y. 2006) ("The Court may exempt any particular assets from the freeze on the ground that they are not linked to the profits of allegedly illegal activity."); *Cf.*, Monster Energy Co. v. Chen Wensheng et al., 136 F. Supp. 3d 897 (N.D. Ill 2015) (declining to modify injunction where defendants had not "submitted any evidence regarding their PayPal account transactions to show that these funds are not the proceeds of counterfeiting activities.").

In order to properly receive a preliminary injunction, Plaintiff must have demonstrated that "(1) the threat of irreparable harm for which there is no adequate remedy at law; (2) that the threatened injury to plaintiff outweighs the harm an injunction might inflict on the defendant; (3) that the plaintiff has a reasonable likelihood of success on the merits; and (4) that the issuance of a preliminary injunction would not disserve the public interest." Am. Can Co. v. Mansukhani, 742 F.2d 314, 321-22 (7th Cir. 1984), *citing*, In re Uranium Antitrust Litigation, 617 F.2d 1248, 1261 (7th Cir. 1980). The strength, or lack thereof, of Plaintiff's likelihood of success on the merits affects the balance of harms. Illinois League of Advocates for the Developmentally Disabled v. Illinois Department of Human Services, 60 F. Supp. 856, 889 (N.D. Ill. 2014).

### b. The asset restraint should be lifted because Plaintiff secured the injunction on false assertions and is highly unlikely to succeed on the merits.

Plaintiff received the TRO and preliminary injunction against Defendant Race_ing by materially misrepresenting the facts of the infringement claims they allege. Plaintiff's memorandum alleges an unsupported generalization that Defendant was "intentionally using Plaintiff's Trademarks to confuse and deceive the consuming public into thinking that Defendant's Counterfeit KTM Products are manufactured or emanate from Plaintiff." [Dkt. 9 at 17]. This is demonstrably false. See **Exhibit A**. Defendant Race_ing's product listing clearly indicated a wholly separate source identifier: Audew®. The use of the mark KTM - along with the marks Honda, Suzuki, *etc.* - were

clearly intended to be descriptive of with what other products Race_ing's products would be compatible. **Exhibit A**. This "use" of the KTM mark is the **sole basis** upon which Plaintiff alleges trademark infringement and justifies the TRO and injunction. Defendant Race_ing's use of the KTM mark clearly constitutes fair use. Packman v. Chi Tribune Co., 267 F.3d 628, 639 (7th Cir. 2001) (observing that when no likelihood of consumer confusion exists, the defendants are often found to be fair use). Statutory fair use serves as a complete defense to a claim for trademark infringement if the Defendant can show: (i) it did not use the mark as a trademark; (ii) the use is descriptive of its goods; and (iii) it used the mark fairly and in good faith. Packman, 267 F.3d at 639.

> *i. Race_ing did not use the KTM mark as a trademark.*

Race_ing's product listing clearly disassociates the Audew® product Race_ing was offering from those originating from KTM. **Exhibit A**. If a defendant is using other trademarks as source indicators, the action is likely a non-trademark use and therefore fair use. Packman, 267 F.3d at 639-40. Race_ing is associating the products with the distinctive Audew® brand, which appears prominently beneath its product title, and on the product itself, and in the product listing details. **Exhibit A**. Race_ing expressly identified itself in its Audew® listing as the seller. Id. The Race_ing brand plainly signifies that the complained products are sourced from Audew®. As can be read, Race_ing did not use "KTM" as a source identifier and instead used the mark Audew® prominently to correctly identify the source of the product. Id.

> *ii. Race_ing's "use" of the term KTM was merely descriptive.*

A descriptive term "is one that merely describes the ingredients, qualities, or characteristics of an article of trade or service. Timeline, Inc. v. Facebook, Inc., 938 F. Supp. 2d 781, 793 (N.D. Ill. 2013), *quoting*, Mil-Mar Shoe Co., Inc. v. Shonac Corp., 75 F.3d 1153, 1157 (7th Cir. 1996). Race_ing's use of the word "for" and its clear display of the product's brand Audew® clearly informs consumers that Race_ing is the origin of the goods. Use of the phrases "for", "fit for", "compatible

with" describe a characteristic of the Race_ing product: namely, that it is compatible with KTM products and not, hypothetically, a Harley Davidson product. This is plainly a descriptive use of Plaintiff's trademark evidencing fair use.

### iii. Race_ing's "use" was in good faith.

A party asserting the fair use defense to a trademark infringement "must show that it used the plaintiff's mark fairly and in good faith." Sorensen v. WD-40 Co., 792 F.3d 712, 725 (7th Cir. 2015). Courts may consider the dissimilarity in packaging, labeling, and display of the competing products when assessing good faith by the defendant. SportsFuel, Inc. v. PepsiCo, Inc., 932 F.3d 589, 600 (7th Cir. 2019). "Mere knowledge" of the plaintiff's mark is insufficient to establish bad faith. Id.

It is clear from reviewing Plaintiff and Race_ing's online storefronts that the products are labeled and display patterns that are dissimilar to one another. *Compare*, [Dkt. 1, at ¶ 7] with **Exhibit A**. Race_ing sells products from an independent online marketplace account that does not bear any semblance or imply any sort of a relationship to Plaintiff's trademark or Plaintiff's business, and expressly identifies itself on the online marketplace. **Exhibit A**; *see*, Packman, 267 F.3d at 642; Ciociola v. Harley-Davidson Inc., 552 F. Supp. 2d 845, 864 (E.D. Wis. 2008), *as amended* (May 28, 2008) (defendant's use of plaintiff's mark was in good faith where defendant used its own distinctive mark to indicate the product's source, suggesting lack of intent to use plaintiff's mark as a trademark). Moreover, the actual source of the listed product, Audew®[1] - is identified (i) in the product phots; (ii) at the very beginning of the product title, (iii) in the Product Details, and (iv) in the Product Desccription. **Exhibit A**. Race_ing descriptively "used" the term "KTM" once, in a bulleted subheading, in good faith and Plaintiff does not allege otherwise. Id. This removes any

---

[1] AUDEW is a registered trademark of Guangzhou Unique Electronics Co, Ltd., U.S. Reg. No. 4,955,157.

likelihood of confusion to consumers that there is some association or sponsorship between Plaintiff and Race_ing's products

For these reasons, Plaintiff is highly unlikely to succeed on the merits of its trademark infringement claim against Defendant Race_ing in light of Defendant's fair use. Packman, 267 F.3d at 639. Plaintiff has little to no colorable argument that it is likely to succeed on the merits warranting the extraordinary relief of a TRO or preliminary injunction. Mazurek, 520 U.S. at 972; "The more likely it is that the [Plaintiff] will win its case on the merits, the less the balance of harms need weigh in its favor." Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health, 699 F.3d 962, 972 (7th Cir. 2012); *see also*, Weifang Tengyi Jewelry Trading Co., Ltd., v. Intuii LLC, Jens Sorensen, *et al.*, Case No. 18-cv-04651, Dkt. 44 (N.D. Ill. August 17, 2018) (J. Feinerman) (granting defendants motion to lift the TRO arguing that if Plaintiff cannot demonstrate a likelihood of success on the merits the balance of harms weighs in favor of the defendant).

The balance of irreparable harm weighs greatly in Defendant's favor as the asset freeze of approximately $323,519.37 unfairly prejudices Defendant whereas Plaintiff faces no real threat of trademark infringement. Decl. Fu Huicai, ¶ 5; *See* Packman, 267 F.3d at 639. Defendant has been deprived of the use of those significant funds - Defendant's money - since the entry of the TRO unwarrantedly, as Plaintiff is not likely to succeed on the merits of its case.

The Court should also consider the effects Plaintiff's preliminary injunction has on non-parties to this case. Vendavo, Inc. v. Long, 397 F. Supp. 3d 1115, 1128 (N.D. Ill. 2019), *citing*, Valencia v. City of Springfield, Illinois, 883 F.3d 959, 965-66 (7th Cir. 2018). Plaintiff, with this case and at least with respect to Defendant Race_ing, is causing competitors' products to be removed from the marketplace under the guise of policing the behavior of *resellers*. Plaintiff does not appear to argue that the Audew® product Defendant offered for sale was inauthentic, or that that Audew® products themselves somehow infringed Plaintiff's rights. The evidence Plaintiff's used to support

entry of the TRO [Dkt. 10, 11] is replete with listings for other clearly-branded products like Audew® which are now similarly no longer for sale as a result to Plaintiff's tenuous infringement claims. This is anti-competitive behavior-by-proxy and the harm the public suffers further favors lifting the preliminary injunction. *See, e.g.*, SKF USA, Inc. v. Bjerkness, 636 F. Supp. 2d 696, 716 (N.D. Ill. 2009) ("Genuine competition within an industry is generally viewed as beneficial to the public as a whole, provided that competition can be achieved through legitimate means"); Clorox Co. v. S.C. Johnson & Son, Inc., 627 F. Supp. 2d 954, 971 (E.D. Wis. 2009) (scales tipped against granting preliminary injunction where non-party employee would be prevented from pursuing career with defendant).

The TRO and preliminary injunction issued against Race_ing were therefore improper under Fed. R. Civ. P. 65. This Court should lift the asset restraint on Defendant Race_ing's Amazon account and dissolve the injunction with respect to Defendant Race_ing.

### c. The asset restraint should be limited to the amount that may possibly be recovered as profits through and equitable accounting.

In the alternative to a complete lift of the asset restraint as to Defendant Race_ing, this Court should limit the asset restraint to the amount that may possibly be recovered as profits through an equitable accounting. The Supreme Court has held that district courts generally lack the authority "to issue a preliminary injunction preventing [a defendant] from disposing of [its] assets pending adjudication" of a plaintiff's claim for money damages. Grupo Mexicano de Dessarrolo v. Alliance Bond Fund, 527 U.S. 308, 333 (1999). This has been affirmed in the Seventh and Second Circuits as well: "federal courts lack power to issue . . . [i]njunctions that prohibit a party from transferring assets pending resolution of an action." Karaha Boda Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 500 F.3d 11, 117 n.8 (2d Cir. 2007); CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 996 (7th Cir. 2002); *see also*, Micnerski v. Sheahan, 2002 WL 31415753, at *1 (N.D. Ill.

Oct. 25 2002) ("federal district courts do not have the power to grant preliminary injunctions to prevent a defendant from transferring assets in which no lien or equitable interest is claimed"); 1800Postcards, Inc. v. Morel, 153 F. Supp. 2d 359, 366 (S.D.N.Y. 2001) (finding that Grupo Mexicano "held that district courts lack authority to issue preliminary injunctions restraining defendants' unencumbered assets in order to ensure the collectability of any money damages that plaintiffs may obtain.").

Prejudgment asset restraints, therefore, are limited to cases seeking equitable relief. Deckert v. Independence Shares Corp., 311 U.S. 282 (1940). "Pursuant to Grupo Mexicano, then, district courts have no authority to issue a prejudgment asset freeze pursuant to Rule 65 where such relief was not 'traditionally accorded by courts of equity.' But they maintain the equitable power to do so where such relief *was* traditionally available: where the plaintiff is pursuing a claim for final equitable relief, and the preliminary injunction is ancillary to the final relief." Gucci America, Inc. v. Weizing Li, 768 F.3d 122, 131 (2d Cir. 2014) (internal citations omitted).

Applying these principles, any prejudgment asset freeze should be limited to amounts that the plaintiff is reasonably likely to recover pursuant to an equitable accounting of profits in this case. CSC Holdings, 309 F.3d at 996; *see also*, Deckers Outdoor Corp. v. Partnerships & Unincorporated Associations Identified on Schedule A, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013) ("[W]here equitable relief is sought, the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief. For example, where (as here) a litigant seeks the equitable remedy of an accounting of profits, then if the amount of the profits is known, then the asset freeze should apply on to that specific amount, and no more… In other words, the asset-restraint order must be limited only to the extent that is needed to secure the equitable remedy; the scope of the exception (to the general ban on prejudgment restraint) is limited by the scope of the exception's rationale."); Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,

51 F.3d 982, 987 (11th Cir.1995) (concluding that the "district court had the authority to freeze those assets which could have been used to satisfy an equitable award of profits" in a Lanham Act case); Monster Energy Co. v. Chen Wensheng et al., (same); *See also*, Klipsch Grp., Inc. v. Big Box Store Ltd., No. 12-CV-6283 (AJN), 2012 WL 4901407, at *2 (S.D.N.Y. Oct. 11, 2012) (observing that "courts in this district have focused on freezing assets to preserve the equitable remedies of a return of lost profits and an accounting, not statutory damages.")

There is no basis for including the remaining amounts in Defendant's account in an equitable award of profits. *See* CSC Holdings, 309 F.3d at 996. Accordingly, under the binding law of the Seventh Circuit, the prejudgment asset freeze must be narrowly tailored to preserve Plaintiff's ability to recover only the potential equitable award of profits under the Lanham Act. Under the current asset freeze, Defendant has approximately $323,519.37 frozen in its account compared to the maximum equitable award of $49,832.85, which are Defendant's profits from sales of the allegedly-infringing product listing Amazon Standard Identification Number (ASIN). Decl. of Fui Huicai, ¶¶ 5-6. Therefore, Defendant requests that this Court exercise its inherent authority, as well as the authority provided by the Federal Rules of Civil Procedure and cases cited above, in light of the additional facts presented to modify the asset freeze in this case to limit the amount restrained to no more than $46,958.27; the accounting is finished. Id.

**d. At a minimum, this Court should increase the bond supporting the injunction.**

On April 20, 2021, this Court confirmed that the $10,000 bond that supported the TRO should support the Preliminary Injunction. [Dkt. 21]. "The purpose of requiring security prior to issuance of an injunction or a temporary restraining order is to guarantee payment of costs and damages incurred by a party who is wrongfully enjoined or restrained." 13 Moore's Federal Practice (3d. ed.1997) at 65-94.1. Further, it is well established that the amount of the bond puts a limit on damages which are recoverable for a wrongfully issued injunction, absent malicious prosecution.

Commerce Tankers Corp. v. Nat'l Mar. Union of Am., AFL-CIO, 553 F.2d 793, 800 (2d Cir. 1977).

Courts have observed that:

> "Plaintiffs have incentives to seek injunctions not only to avert irreparable harm to themselves, but also to impose costs on the other party. This, too, may be done out of spite, or because the higher costs to the defendant in complying, the more pressure he will feel to "bargain desperately to buy his way out of the injunction."

O Centro Espirita Beneficiente v. Ashcroft, 389 F.3d 973, 1017 (10th Cir. 2004), *quoting*, Am. Hosp. Supply Corp. v. Hosp. Prods., Ltd., 780 F.2d 589, 594 (7th Cir. 1986). Since the TRO has been affected against Defendant's Amazon store, nearly $323,519.37 has been withheld and prevented from being utilized by Defendant for any purpose: continuing the business, investment, or otherwise. Defendants are entitled to a bond sufficient to make them whole upon an ultimate finding that the injunction was improperly imposed. Blumenthal v. Merril Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1055 (2d Cir. 1990), *citing*, Commerce Tankers. Defendants in intellectual property infringement cases of this type have enjoyed the surety of bonds much larger than $10,000. *See, e.g.*, CJ Prod. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127, 163 (E.D.N.Y. 2011) ($100,000 bond supporting injunction in copyright and trademark infringement case "fitting"); AB Electrolux v. Bermil Indus. Corp., 481 F. Supp. 2d 325, 337 (S.D.N.Y. 2007) ($350,000 bond set in trademark infringement case with low likelihood of success); Smc Corp., Ltd. v. Lockjaw, LLC, 481 F.Supp.2d 918, 930 (N.D. Ill., 2007) ("We find an injunction bond of $500,000 warranted to cover Lockjaw's potential lost profits and other damages in the event it is subsequently determined that Lockjaw was wrongfully enjoined."). While this Court set $10,000 as the initial bond applicable to all defendants in the case, Defendant Race_ing's withheld funds of $323,519.37 makes the bond completely disproportionate.

Even where an appropriate figure is unclear, district courts should err on the high side. Mead Johnson & Co. v. Abbot Labs., 201 F.3d 883, 888 (7th Cir.), opinion amended on denial of reh'g, 209 F.3d 1032 (7th Cir. 2000); Scanvec Amiable Ltd. v. Chang, No. CIV.A. 02-6950, 2002 WL

32341772, at *3 (E.D. Pa. Nov. 1, 2002), *aff'd*, 80 F. App'x 171 (3rd Cir. 2003) (same). This is because while an error in setting the bond too high is not serious, setting it too low produces irreparable injury to the wrongfully enjoined. W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 770 n.14 (1983). The Court should require that Plaintiff post as a bond, to secure its continued unlimited injunction, the amount of funds restrained in Defendants' Amazon accounts: $323,519.37.

An increase in bond is further warranted in light of Plaintiff's woeful disregard for considering Defendant's obvious affirmative fair use defense. Defendant's product listing explicitly states that Race_ing's product is a "[c]ompletely waterproof design. Work **for** most Motorcycles such as Honda, Kawasaki, KTM, Suzuki, Yamaha and many other brands." (emphasis added). Defendant's use of the KTM mark is not used as a source identifier, was merely descriptive of Race_ing's goods, and was used fairly in good faith. Packman v. Chi Tribune Co., 267 F.3d 628, 639 (7th Cir. 2001). For these reasons, Plaintiff's infringement claims as to Defendant Race_ing are highly unlikely to succeed on the merits making the asset restraint improper under Rule 65. *See* Weifang, Case No. 18-cv-04651, at *1 (ordering the lifting of a TRO based on plaintiff's unlikelihood to succeed on the merits of its trademark infringement claim). Therefore, if this Court elects to maintain the asset restraint over Defendant then this Court should increase the bond to $323,519.37 in order to provide Defendant a fair opportunity to recoup the financial harm inflicted by Plaintiff's improperly sought injunction.

### III. Conclusion

For the reasons set forth above, the asset freeze afflicting Defendant Race_ing's Amazon seller account should be lifted and the Preliminary Injunction as to Defendant Race_ing dissolved. In the alternative, this Court should reduce the asset restraint afflicting Defendant to at most $46,958.27 to reflect the appropriate amount of relief Plaintiff could possibly be entitled to.

Dated: May 22, 2021

 Respectfully Submitted,

 /s/Adam E. Urbanczyk
 Adam E. Urbanczyk
 AU LLC
 564 W. Randolph St. 2nd Floor
 Chicago, IL 60661
 (312) 715-7312
 (312) 646-2501 (fax)
 adamu@au-llc.com

 *Counsel for Defendant Race_ing*